UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO.  2:12CR78 |
| v. | ) | |
| | ) | Sentencing Date: April 24, 2013 |
| HUFFMAN EARL MONK | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES**
**WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Neil H. MacBride United States

Attorney, and Stephen W. Haynie, Assistant United States Attorney, and in accord with 18

U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2

(Nov. 2007), files this Position of the United States with Respect to Sentencing in the instant

case.  The United States asks the Court to impose a sentence of at least 87 months, which is

within the properly calculated Sentencing Guidelines range of 78-97 months.  Such a sentence

appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

## I.  U.S.S.G. CALCULATION AND OBJECTIONS

1. **U.S.S.G. § 2C1.1(b)(3); high-level decision-making or sensitive position**

The United States objects to defendant receiving a four-level enhancement for the offense

involving a public official in a high level decision making position.  Co-defendant Nathan

DUNN was a Petty Officer Second Class (E-5).  The Commentary to § 2C1.1(b)(2) underscores

"the Sentencing Commission's intent that the provision apply to corruption by officials sitting in

high positions of the public trust."  *United States v. Stephenson*, 895 F.2d 867, 878 (2d Cir.

1990).   The Fourth Circuit has stated that it "is apparent that any official to whom a gratuity

may be offered or given will have some authority or apparent authority to make decisions that will affect such an official from a 'multitude of personnel in the federal service.' The steep enhancement provided by § 2C1.1(b)(2)(B) is reserved for corruption by officials in high positions of public trust." *United States v. Weston*, 962 F.2d 8, 1992 WL 90554 *7 (4th Cir. 1992), quoting *Stephenson*, 895 F.2d at 877-78. Nathan DUNN is not such a public official.

2. **Relevant Conduct, Loss to the U.S. Government**. **U.S.S.G. § 2C1.1**

The United States contends that the loss to the government based on the conspiracy between defendant and co-defendant Nathan DUNN is $1,083,048.22. At the request of the Coast Guard Investigative Service (CGIS) investigators, the U.S. Military Surface Deployment and Distribution Center (SDDC) conducted a full audit of over 300 freight contracts awarded by the USCG Surface Forces Logistics Center (SFLC) Norfolk office between 01 January 2009 and 31 August 2011. The audit was divided into two separate spreadsheets for the contracts awarded by the two USCG Transportation Administrators assigned to the SFLC Norfolk office at that time, Diane DUNBAR and Nathan A. DUNN. After completion of the SDDC audit, the USCG Transportation Freight Program Manager, Brenda B. BARRY, conducted a thorough analysis of every individual contract and amended the audit with additional details and comments. After completion of the analysis by Ms. BARRY, the audit document was sent back to the SDDC for a third review. The final version of the Norfolk transportation office audit was subsequently used for determining the financial loss to the government. As per SDDC regulations, the 10th Carrier on the Rate and Rank list was used in the audit as a baseline to establish the "appropriate" cost of each freight shipment Nathan DUNN and Diane DUNBAR contracted with defendant's twelve freight brokerage companies.

Ms. BARRY also conducted a review of freight contract activity across all seven USCG Freight Transportation Offices for the period 01 January 2009 to 31 December 2010. This review of all carrier activity during this two year period yielded the following results:

| U.S. Coast Guard Transportation Office | Total Freight Contracts | MONK Contracts | Percentage |
|---|---|---|---|
| Elizabeth City, NC | 6058 | 0 | 0% |
| Miami, FL | 639 | 0 | 0% |
| Baltimore, MD | 4173 | 9 | 1% |
| Seattle, WA | 223 | 0 | 0 |
| Portsmouth, VA | 347 | 5 | 2% |
| New Orleans, LA | 149 | 0 | 0% |
| Norfolk, VA | 1098 | 346 | 32% |

This review confirmed the original analysis performed at the initiation of the CGIS investigation in April 2011: the source of almost all USCG freight contracts awarded to the twelve companies owned by Huffman MONK was awarded by the two Transportation Administrators in the SFLC Norfolk office, Nathan DUNN and Diane DUNBAR.

The USCG and the SFLC has already established that Diane DUNBAR was negligent in performing her duties as a Transportation Administrator by not following correct procedures when awarding freight contracts by companies owned by Huffman MONK. The selection of Huffman MONK - owned freight companies, particularly those by use of the "Override" command to bypass the established Rate and Rate system, was determined to have been inappropriate. The SFLC command reviewed Diane DUNBAR's performance during this period and disciplinary action was administered under the guidelines set by the Office of Personnel Management (OPM). It is our understanding that the defendant will rely on USCG contracts

from the Norfolk SFLC office from 2007 through 2011 (excluding contracts issued by Nathan DUNN) to show that the 10th carrier on the rate and rank system was not tenable.  The government argues that relying on Diane DUNBAR's contracts to Huffman MONK companies (32% of the Norfolk contracts) as a baseline or standard for the appropriate freight shipment contract costs makes little sense.  Diane DUNBAR's contracts dramatically skews the results.  As a result, the government will show that other USCG transportation offices will be more in line with the 10th carrier position.

During the execution of the Search Warrants on Huffman MONK's Alabama businesses in February 2012, a small number of documents pertaining to USCG freight contracts awarded by the SFLC Norfolk office were located and seized.  These documents allowed investigators to determine all the financial elements involved in each freight contract, including the cost of the trucking company hired by Huffman MONK to actually carry the contracted goods from origin to destination.   Twenty-two of these shipments were subsequently charged in the indictment.  Analysis of these shipments revealed that if the 10th carrier on the SDDC audit had been awarded these contracts, the average profit for the freight carrier would have been approximately 14% over the cost of the truck.  It has been well established during the course of this investigation that a freight brokerage company would expect to generate  profits of between 5% and 15% on a military freight contract.

## II.  ARGUMENT

In *United States v. Booker*, 543 U.S. 220, 264 (2005), the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." *See also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's

majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence."). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" *Booker,* 543 U.S. at 264 (*quoting* 28 U.S.C. § 991(b)(1)(B)). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B); *Biheiri*, 356 F.Supp.2d at 594.

### A Sentence of At Least 87 Months Complies with the Factors and Considerations Set Forth in 18 U.S.C. § 3553(a).

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(a)(1)  *Nature and Circumstances of the Offense*:  Applying these sentencing factors to the facts of this case demonstrates that a sentence of at least 87 months incarceration (halfway within the range of 78-97 months) is appropriate and reasonable.  In this case, the defendant caused a loss to the government of over $1 million in under two years.  Moreover, defendant recruited and corrupted a much younger USCG Transportation Administrator by agreeing to pay him bribes totaling approximately $230,000 in exchange for fraudulently overpriced military freight contracts to his companies.  In addition, outside this investigation and prosecution, defendant had simultaneously paid at least three gratuities to a Georgia National Guard Transportation Officer who has agreed to plead guilty to accepting gratuities from defendant. Simply put, the defendant was in a business where he was able to influence and corrupt low paid military transportation officers in exchange for lucrative military contracts. Consequently, a sentence of at least 87 months is fully justified.

(2)  *History and Characteristics of Defendant*: The defendant committed prior felonies while in the military when he was in his late 30s.  He served 18 months imprisonment, received a Bad Conduct discharge, and lost his military pension.  The government has addressed these issues in its response to the defendant's downward departure motion.  Defendant has been married four times, he has abused alcohol throughout his life, and recently engaged in a barroom brawl in which he sent a man to the hospital.  Defendant appears to have a very high net worth, based on his successful trucking business.  Nevertheless, defendant has flagrantly and continuously violated Department of Transportation (DOT)  regulations by allowing  nine of his freight brokerge companies to transport military freight while his companies' DOT authority had been revoked.  Documents found at defendant's business suggested he encouraged fraud to his workers.  Accordingly, a sentence of at least 87 months is appropriate.

6

(2)(A)  *Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote the Respect for Law, and to Provide Just Punishment for the Offense*

Bribery is one of the most serious of fraud crimes, as suggested by the Bribery Base Offense Levels of 12 and 14.  Defendant paid out almost a quarter of a million dollars in less than two years in an effort to defraud the government and to get rich quick.

(2)(B),(C)  *Need to Afford Adequate Deterrence and Protect Public from Further Crimes*

A lengthy prison sentence would be the best deterrence to deter future criminal conduct and protect the public and the government fisc.

(6)  *Need to Avoid Unwarranted Sentence Disparities*

Co-defendant Nathan MONK is expected to receive a sentence similar to that of defendant.  Nathan DUNN's sentence is likely to be higher due to his being a public official.

(7)  *Need to Provide Restitution*

Defendant has the ability to pay full restitution as well as his mandatory forfeiture obligations.

The United States intends to call Brenda BERRY and Special Agent Kevin TURCOTTE as witnesses at sentencing.  They will testify to how the loss calculation was determined and will also address the defendant's loss calculations.

### III. <u>CONCLUSION</u>

Therefore, for the above-stated reasons, the United States submits that a sentence of at least 87 months is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Neil H. MacBride
United States Attorney


_____/s/_____
Stephen w. Haynie
Assistant United States Attorney
Virginia State Bar Number 30721
Attorney for the United States
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: (757) 441-6331
Facsimile Number: (757) 441-6689
Email Address: steve.haynie@usdoj.gov

8

## Certificate of Service

I hereby certify that on the 17th day of April, 2013, I electronically filed the foregoing to the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Adam M. Carroll
Stephen P. Pfeiffer
Counsel for Defendant
Wolcott Rivers Gates
Convergence Center IV
301 Bendix Road, Suite 500
Virginia Beach, Virginia 23452
Office Number: (757) 497-6633
acarroll@wolriv.com
pfeiffer@wolriv.com

A copy of the foregoing will be sent by PDF email to the following:

Karen R. Franklin
U.S. Probation Officer
1001 Omni Blvd., Suite 300
Newport News, VA 23606
karen_franklin@vaep.uscourts.gov

_____/s/_____
Stephen W. Haynie
Assistant United States Attorney
Virginia State Bar Number 30721
Attorney for the United States
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: (757) 441-6331
Facsimile Number: (757) 441-6689
Email Address: steve.haynie@usdoj.gov

9